UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


KO PIPELINE, LLC,

      Plaintiff,

  v.                                  Case No. 2:16-cv-969
                                        JUDGE GEORGE C. SMITH
                                        Magistrate Judge Deavers

MOORHEAD BROTHERS, INC.,

      Defendant.


## OPINION AND ORDER

This matter is before the Court upon Plaintiff KO Pipeline, LLC's Motion for Summary Judgment ("KO's Motion") (Doc. 13). The Motion is fully briefed and ripe for disposition. For the following reasons, KO's Motion is **DENIED**.

### I.    BACKGROUND

Defendant Moorhead Brothers, Inc., a South Carolina corporation, was the general contractor on a project based in Belmont, Ohio known as the Clark 12" LP Gas Project (the "Project"). (Doc. 1, Compl. ¶ 6–7). Plaintiff KO Pipeline, LLC, organized under the laws of Ohio, performed pipeline construction services for Moorhead on the Project pursuant to a Subcontract. (*Id.*; Doc. 1-1, Subcontract). As provided by the Subcontract, Moorhead retained 10% of all payment requests by KO until the work was 100% complete. (Doc. 1-1, § 3.1(C)). It is undisputed that KO and its subcontractors completed the substantive pipeline work contemplated by the Subcontract no later than September 26, 2015. (Doc. 13-2, Moorhead's

Resp. to Req. for Admission No. 4). At that point, the final 10% retainage amount was $86,593.50. (*Id.*, Admission No. 10).

The Subcontract required KO to provide lien waivers for each of the subcontractors hired by KO. (Doc. 1-1, § 3.1(C)). Moorhead was also permitted to withhold from Subcontract payments an amount necessary to protect Moorhead from "any claim or lien against [Moorhead] or the premises arising out of [KO's] performance of this Subcontract" asserted by other parties "until the situation has been satisfactorily remedied or adjusted by [KO] to the sole acceptance of [Moorhead]." (*Id.*, § 3.1(B)). Of the subcontractors that KO hired to work on the Project, KO was able to obtain lien waivers for all but two: B&N Construction, Inc. and 7K Construction, Inc. (Doc. 13-1, Ozalas Aff. ¶ 5).

B&N and 7K contended they had supplied additional services on the Project for which they had not been paid. (*Id.*). After discussing the situation with Moorhead, KO provided documentation to B&N and 7K that allegedly demonstrated that any amounts owing to B&N and 7K were more than offset by amounts that B&N and 7K owed to KO. (*Id.*). However, KO did not provide the Court with the documentation provided to B&N and 7K, nor does KO specify whether the amounts B&N and 7K owed KO were related to the Project, or even the amount that B&N and 7K claimed remained outstanding from the Project. B&N and 7K continued to refuse to provide lien waivers for the Project. (*Id.* ¶ 6).

In December 2015, KO and Moorhead exchanged a string of emails regarding release by Moorhead to KO of certain funds related to the Project. (Doc. 13-1, Emails, PAGEID #51–55). On December 11, 2015, Moorhead's representative stated, "once I receive all the final lien waivers from the list below (with the exception of B&N and 7K) completely filled out I will be able to release payment to you." (*Id.*, PAGEID #53). On December 12, 2015 (a Saturday),

another representative of Moorhead stated, "[t]he wire paperwork was turned in and wire will go out Monday." (*Id.*, PAGEID #51). However, the parties are now in agreement that Moorhead continues to withhold $86,593.50 in retainage. (Doc. 13-2, Admission No. 10). It is not clear from the record whether the wire transfer did not proceed on Monday, December 14, 2015, as anticipated, or whether this email string was in fact referring to the release of funds other than the 10% retainage amount.

On December 15, 2015, MarkWest, the owner of the Project, paid Moorhead its final retainage payment. (Doc. 13-1, MarkWest Payment Remittance Advice, PAGEID #50). Although not in the record, Moorhead apparently sent a letter to KO on January 19, 2016, suggesting that the only reason Moorhead had not released the retainage was that KO had not been able to provide a lien waiver for B&N Construction, with whom KO may have a dispute. (Doc. 13-2, Letter from KO's counsel, PAGEID #70). KO made a demand through its counsel for payment of the retainage on June 8, 2016, in which it noted that the time for any subcontractor to file a lien on the Project had expired, and that therefore "B&N Construction no longer has any conceivable claim against the owner (or Moorhead with whom it had no contract)." (*Id.*).

Moorhead did not release the retainage funds, and KO commenced this action on October 10, 2016, in order to recover the $86,593.50 withheld from the subcontract payments, as well as interest under Ohio's Prompt Payment Act, R.C. § 4113.61, and attorney's fees and costs. KO now moves for summary judgment on its contract and Prompt Payment Act claims.

## II.    SUMMARY JUDGMENT STANDARD

KO moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

3

*Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). But self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on

which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

## III. DISCUSSION

KO asserts that Moorhead was obligated to release the $86,593.50 in retainage by both the Subcontract and the Prompt Payment Act. The Court will consider each of these grounds in turn.

### A. The Subcontract[1]

KO's Subcontract with Moorhead contains several provisions that bear on the conditions for payments to KO. Section 3.1(A), titled "Contract Price," provides in part that "[p]ayment for such Work and materials by [MarkWest] to [Moorhead] shall be a condition precedent to payment by [Moorhead] to [KO]." Section 3.6, titled "Application for Payment," provides in part: "Release of all retainage once vegetation has matured to a MarkWest accepted amount." Section 3.1(C), titled "Payment Schedule," provides in part that:

> [Moorhead] shall retain 10 percent (10%) on all [KO] payment requests until the work is one hundred percent (100%) complete then the retainage will be reduced to 0 percent (0%) and the work is completed and [MarkWest] has released the final payment. Paid in Full to Date Lien Waivers shall be provided by the Subcontractor, for each and every Payment Request, for all materials furnished to Payment Request Date and II subcontractors furnished to Payment Request Date, by the Subcontractor.

Finally, "Work" is defined under § 2 and "shall include all mobilization, demobilization, labor, tools, equipment, insurance, taxes, supervision, and insurance [*sic*] for the completion of all Work for the Construction of the [Project] in its entirety. . . . [KO's] Work shall include and not be limited to: grading, stringing pipe, welding, coating, ditching and full restoration of the [Project's] right of way easement."

---

[1] KO asserts, and Moorhead does not dispute, that the West Virginia choice of law provision contained in the Subcontract is void under R.C. § 4113.62(D)(2) (making non-Ohio choice of law provisions unenforceable in construction contracts for improvements to real estate located in Ohio). The Court therefore applies Ohio law to the Subcontract.

5

1. **Completion of the work**

The parties do not dispute that KO and its subcontractors completed the substantive pipeline construction work on the Project by September 26, 2015. KO's position is that 100% of the work was complete at that time, and after MarkWest made its final retainage payment to Moorhead on December 15, 2015, all conditions for release of the $86,953.50 Subcontract retainage had been fulfilled. Moorhead contends, however, that KO failed to complete all "work" required by the Subcontract because it failed to provide lien waivers for B&N and 7K. (Doc. 13-2, Admission No. 4).

The Court disagrees that provision of lien waivers under § 3.1(C) constitutes part of the "Work" as defined by § 2. While the substantive part of the "Work" definition "shall include and not be limited to" various types of construction work, the procedural part of the "Work" definition "shall include all mobilization, demobilization, labor, tools, equipment, insurance, taxes, supervision, and insurance" without a caveat that the definition may include other types of procedural or administrative requirements not listed. That is, if the parties intended for lien waivers to be included in the definition of "Work," they would have expressly included it. Thus, the Court concludes that KO's "Work" on the Project was 100% complete by the time MarkWest released its final retainage payment to Moorhead on December 15, 2011, and the conditions for Moorhead's final payment to KO, absent another contractual exception, were fulfilled.

2. **Withholding pending resolution of claims by KO's subcontractors**

Even if conditions for final payment were fulfilled, Moorhead argues that it was nevertheless permitted by the Subcontract to withhold the $86,593.50 in retainage under § 3.1(B), which provides that

> In the event of any breach by [KO] of any provision or obligation of this Subcontract, or in the event in the event of the assertion by other parties of any claim or lien against [Moorhead] or the premises arising out of [KO's]

6

> performance of this Subcontract, [Moorhead] shall have the sole right to retain out of any payments due or to become due to [KO] an amount sufficient to completely protect Moorhead from any and all loss, damage or expense there from until the situation has been satisfactorily remedied or adjusted by [KO] to the sole acceptance of [Moorhead].

Moorhead contends that KO's failure to provide lien waivers or otherwise address claims of nonpayment by B&N and 7K triggered this provision and permits it to withhold funds otherwise due under the Subcontract.

Section 3.1(B) thus provides two grounds for withholding payment otherwise due under the Subcontract: (1) KO's breach "of any provision or obligation of this Subcontract," or (2) "the assertion by other parties of any claim or lien against [Moorhead] or the premises" arising out of KO's work.

### a. KO's breach of the Subcontract

KO acknowledges that it was required by the Subcontract to provide lien waivers for all subcontractors it hired. (Doc 13-1, Ozalas Aff. ¶ 5). It also acknowledges that it did not provide lien waivers for B&N or 7K. (*Id.*). However, KO argues its failure to provide lien waivers should not permit Moorhead to withhold the retainage because (1) provision of lien waivers is not a condition precedent to payment; (2) Moorhead waived its right to require lien waivers for B&N and 7K; and (3) even if provision of lien waivers was otherwise a requirement for Moorhead to release the retainage, this requirement should be excused to avoid forfeiture. All of these arguments lack merit.

First, KO is correct that conditions precedent are disfavored in contract law, and that the language of the Subcontract does not indicate that lien waivers are a condition precedent to final payment. *E.g.*, *Campbell v. George J. Igel & Co.*, 2013-Ohio-3584, 3 N.E.3d 219 (4th Dist.), ¶ 13 ("Conditions precedent are not favored by the law, and whenever possible courts will avoid construing provisions to be such unless the intent of the agreement is plainly to the contrary.").

The Court has already concluded that all conditions necessary for Moorhead to make final payment to KO were met. But § 3.1(B) allows Moorhead to withhold amounts from payments that are otherwise due if necessary to redress KO's breach of any provision of the Subcontract. Thus, the fact that provision of lien waivers was not a condition precedent to final payment is of no assistance to KO.

Second, KO has not put sufficient evidence into the record to establish waiver by Moorhead of the lien waiver requirement. KO relies on a statement in an affidavit by its owner, Kimberly Ozalas, that "Moorhead notified me that it was satisfied and that KO Pipeline LLC retainage would be released even without lien waivers from B&N Construction, Inc. and 7K Construction, Inc." (Doc. 13-1, Ozalas Aff. ¶ 5). KO also relies on the email exchange in which Moorhead's representative stated that "once I receive all the final lien waivers from the list below (with the exception of B&N and 7K) completely filled out I will be able to release payment to you." (Doc. 13-1, Emails, PAGEID #53). However, the Court questions whether this email referred to the $86,593.50 currently withheld by Moorhead as retainage, as the same email chain suggested that whatever funds were referred to in the email were in fact released by wire transfer the following Monday, December 14, 2015. (*Id.*, PAGEID #51). Moreover, the final retainage payment from WestMark to Moorhead (an express condition precedent to Moorhead's release of KO's final retainage) was not made until Tuesday, December 15, 2015; it therefore seems unlikely that Moorhead would agree to release KO's final retainage before it received payment from WestMark. And finally, an affidavit by Moorhead's Division Manager states that "Moorhead did not agree to pay KO if they were not able to provide lien waivers from B&N Construction, Inc. and 7K Construction." (Doc. 14, Sessions Aff. ¶ 11). The Court

8

therefore finds an issue of fact as to whether Moorhead waived KO's obligation to provide lien waivers for B&N and 7K.

The Court is also not convinced that KO's obligation to provide lien waivers must be set aside to avoid forfeiture. KO cites *Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd.* for the proposition that KO should be paid for the substantive work it has completed, even though it may not have fulfilled all of its contractual obligations. 196 Ohio App. 3d 784, 2011-Ohio-4979, 965 N.E.2d 1007, ¶ 16. There, the general contractor refused to pay the subcontractor anything, even after the subcontractor completed all work on the project, because the project owner cancelled the project and refused to pay anything to the general contractor. *Id.*¶ 5. However, the court determined that the subcontract at issue contained a "pay-when-paid" clause rather than a "pay-if-paid" clause. That is, the timing, but not the existence, of the general contractor's obligation to pay the subcontractor was pegged to the time of payment by the project owner to the general contractor. *Id.* ¶¶ 18–24. As a result, even though the project owner never paid anything to the general contractor, the general contractor was still obligated to pay the subcontractor for the completed work within a reasonable time. *Id.* ¶ 25.

*Evans, Mechwart* is inapposite, however. In construing the subcontract, the court did rely in part on principles disfavoring forfeiture, but principally relied on the plain language of the contract itself, which other courts had already determined to constitute a "pay-when-paid" clause. Moreover, the subcontractor in *Evans, Mechwart* had fulfilled all of its contractual obligations and was faced with receiving nothing in return. In contrast, KO admittedly has not fulfilled all of its contractual obligations and has already received 90% of the Subcontract price. The Court therefore finds that, if any "forfeiture" were to occur, it would not be disproportionate to KO's failure to obtain lien waivers as required by the Subcontract. *See* Restatement (Second)

9

Contracts, § 229 (requiring "disproportionate forfeiture" before excusing the non-occurrence of a contractual condition).

### b. Assertion by other parties of claims or liens

KO argues that the time for any subcontractors to file liens on the Project has long expired, and therefore there can be no possibility of claims by KO's subcontractors against Moorhead or the Project premises. And, indeed, Moorhead has admitted that the time for the filing of liens has expired (at least as of July 21, 2017, when it responded to KO's request for admission of that fact). (Doc. 13-2, Admission No. 7). Moorhead further admitted that neither KO nor any of its subcontractors filed mechanics' liens related to the Project. (*Id.*, Admission No. 5). It is therefore true that neither Moorhead nor the Project can be liable for any claims pursued via mechanics' lien. *Conveyor Eng'g Co. v. Foreman Indus., Inc.*, 2d Dist. Montgomery No. 8244, 1984 WL 5429, at *6 (Jan. 19, 1984) (when the time for filing a mechanics' lien has expired, "the situation as to the payment or collection of money is the same as if there were no mechanics' lien law.").

However, the Subcontract provides for withholding upon the assertion of "any *claim* or lien" against Moorhead. (Doc. 1-1, § 3.1(B)). Ohio's mechanics' lien statute does not displace any other remedies that may be available to KO's subcontractors. *Janell, Inc. v. Woods*, 70 Ohio App. 2d 216, 217–18, 435 N.E.2d 1138, 1140 (1st Dist. 1980); *Blewett v. Sullivan*, 104 Ohio App. 486, 489, 145 N.E.2d 839, 841 (8th Dist. 1957). A mechanics' lien does not itself create a claim; it merely provides security for a subcontractor's claim for payment from contractors or owners higher up the chain. *See* R.C. § 1311.11(B) (when a mechanics' lien is void for failure to timely commence suit, "the claim upon which the lien was founded is not prejudiced by the failure, except for the loss of the lien as security for the claim."). Thus, any claims by KO's

subcontractors upon which a mechanics' lien may have been founded are not barred by failure to timely file a mechanics' lien.

The question then becomes whether KO's subcontractors could have any non-mechanics'-lien claims against Moorhead or the Project for non-payment. KO's subcontractors do not have a contractual relationship with Moorhead or MarkWest, so no contract claims are available to them. However, Ohio courts have recognized that subcontractors may have quasi-contractual claims for nonpayment against entities other than the parties to their subcontract. *Filo v. Liberato*, 2013-Ohio-1014, 987 N.E.2d 707 (7th Dist.), ¶ 36 (denying motion to dismiss unjust enrichment claim by subcontractor against project owner). It is therefore possible that B&N and 7K could assert quasi-contractual claims against Moorhead even though the time for filing a mechanics' lien has expired.

KO has not demonstrated the absence of a genuine issue of material fact as to whether B&N and 7K's claims of nonpayment support withholding under § 3.1(B). The facts surrounding when, how, and why B&N and 7K refused to provide lien waivers, and what Moorhead knew about their refusal, are not sufficiently developed in the record. It could well be, on the facts as asserted by KO, that B&N and 7K have viable claims against Moorhead. As the Court is required to "view[ ] factual evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in that party's favor," the Court cannot conclude on this record that KO is entitled to summary judgment on the basis of the Subcontract. *Barrett*, 556 F.3d at 511.

**B.     Ohio's Prompt Payment Act**

Even if payment of the retainage is not required by the Subcontract, KO may still succeed if payment is required by Ohio's Prompt Payment Act, R.C. § 4113.61 (the "PPA"). That statute requires payment of final retainage by a contractor to a subcontractor within ten calendar days

after receipt of final retainage from the owner. R.C. § 4113.61(A)(3). As MarkWest undisputedly paid Moorhead its final retainage on December 15, 2015, KO argues that the PPA required Moorhead to pay KO its final retainage no later than January 3, 2016 (apparently allowing Moorhead to make the payment within ten business days, rather than the ten calendar days specified by the statute). (Doc. 13, Mot. at 13).

However, the PPA also allows a contractor to "withhold amounts that may be necessary to resolve disputed liens or claims involving the work or labor performed or material furnished by the subcontractor or material supplier." R.C. § 4113.61(A)(1). As discussed *supra*, the facts as recounted by KO suggest the real possibility of claims by B&N and 7K against Moorhead involving the work performed by KO. Further, unlike the withholding provision in the Subcontract, the PPA does not require that the disputed claims be asserted against Moorhead; it would also encompass contractual claims between B&N or 7K and KO, which Moorhead was aware of in late December 2015 when KO disclosed its inability to obtain lien waivers.

KO argues that *Masiongale Elec.-Mechanical, Inc. v. Constr. One, Inc.* forecloses the application of the PPA's withholding provision. 102 Ohio St.3d 1, 2004-Ohio-1748, 806 N.E.2d 148. In that case, the Ohio Supreme Court held that breach of a lien-waiver clause in a construction contract does not create a disputed lien or claim involving the work or labor performed or material furnished by the subcontractor within the meaning of R.C. 4113.61(A)(1). *Id.* ¶ 22. However, in *Masiongale*, there was no indication that entities hired by the subcontractor actually had claims for non-payment; the general contractor was relying on the subcontractor's failure to provide lien waivers alone to withhold payment. That is not the case here, as it is undisputed that B&N and 7K claimed they had not been paid in full for their work on the project. These appear to be precisely the type of disputed claims involving work

performed by the subcontractor that the PPA's withholding provision was meant to target.  As a result, KO has not demonstrated that it is entitled to judgment as a matter of law on its PPA claim.

## IV.    CONCLUSION

For the foregoing reasons, KO's Motion for Summary Judgment is **DENIED**.

The Clerk shall remove Document 13 from the Court's pending motions list.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　 */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**